**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEXCOM, INC.,            )<br>                          )<br>   Plaintiff,          )<br>                          )<br>v.                        )<br>                          )<br>INSPARK TECHNOLOGIES, INC., )<br>                          )<br>   Defendant.         )  | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Dexcom, Inc. (Dexcom) hereby files this Complaint for Declaratory Judgment against Defendant InSpark Technologies, Inc. (InSpark) and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory judgment of non-infringement of United States Patents Nos. 8,538,703 (the '703 patent), 7,874,985 (the '985 patent), and 7,025,425 (the '425 patent) (collectively the Patents-in-Suit), pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, and for such other relief as the Court deems just and proper.

**PARTIES**

2. Dexcom is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business at 6340 Sequence Drive, San Diego, CA 92121. Dexcom is a medical device company primarily focused on the design, development, and commercialization of glucose monitoring systems for use by and for the treatment of patients suffering from diabetes. Dexcom has advanced the accuracy of glucose monitoring through its products.

3. On information and belief, InSpark is a corporation organized and existing under the laws of the state of Delaware with its headquarters in Charlottesville, Virginia. On information and belief, InSpark is registered to do business in Delaware and has an agent for service of process in Wilmington, Delaware.

## JURISDICTION AND VENUE

4. This is an action under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, against InSpark seeking a declaration that pursuant to the Patent Laws of the United States, the claims of the Patents-in-Suit are not infringed by Dexcom. Jurisdiction as to these claims is conferred on this Court by 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

5. This Court has personal jurisdiction over InSpark because on information and belief, it is organized and existing under Delaware law and is registered to do business in this district.

6. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).

## THE PATENTS-IN-SUIT

7. On information and belief, the '425 patent is entitled "Method, System, and Computer Program Product for the Evaluation of Glycemic Control in Diabetes from Self-Monitoring Data." The '425 patent lists April 11, 2006, as its issue date. A copy of the '425 patent is attached as Exhibit A.

8. On information and belief, the '985 patent is entitled "Method, System, and Computer Program Product for the Evaluation of Glycemic Control in Diabetes From Self-Monitoring Data." The '985 patent lists January 25, 2011, as its issue date. A copy of the '985 patent is attached as Exhibit B.

9. On information and belief, the '703 patent is entitled "Method, System, and Computer Program Product for the Processing of Self-Monitoring Blood Glucose (SMBG) Data to Enhance Diabetic Self-Management." The '703 patent lists September 17, 2013, as its issue date. A copy of the '703 patent is attached as Exhibit C.

10. On information and belief, InSpark claims to be the exclusive licensee of the Patents-in-Suit.

**INSPARK'S THREATS AGAINST DEXCOM INVOLVING THE PATENTS-IN-SUIT**

11. InSpark has made it clear that Dexcom is a target for enforcement of the Patents-in-Suit.

12. In or about July 2016, InSpark sent a letter to Dexcom's Executive Vice President for Strategy and Corporate Development. The letter is from Erik Otto, InSpark's President and Co-Founder. A true and correct copy of this letter is attached as Exhibit D.

13. The letter began by stating that InSpark is "engaging in a process of licensing aspects of [its] technology platform and forming partnerships around [its] lead product, named Vigilant$^{TM}$. We are reaching out to you as a representative of Dexcom to determine your interest in submitting a proposal." The letter further emphasized that InSpark's technology "portfolio is supported by studies published in over 20 medical journal articles, and covered by 9 patent families." Enclosed with the letter was a brochure, which included information about InSpark's "Strong IP Protection" and "rights to an extensive portfolio of intellectual property comprising patents," as well as a list of U.S. Patents. The letter did not identify or reference any Dexcom products. The letter listed "important dates," including initial discussions with interested parties through September 30, 2016 and concluding with agreement execution by December 31, 2016.

3

14. Just a few weeks later, on or about August 3, 2016, Dexcom received a second letter from InSpark. Unlike the first letter, which InSpark addressed to Dexcom's Executive Vice President for Strategy and Corporate Development, InSpark addressed the second letter to Dexcom's legal department, and specifically to Patrick Murphy, Vice President of Legal Affairs for Dexcom. A true and correct copy of the August 2016 letter is attached as Exhibit E.

15. The letter began by stating that "[InSpark has] recently become aware of functionality in Dexcom products that is substantially similar to technology [InSpark has] exclusive rights to through [its] agreement with the University of Virginia Licensing and Ventures Group." InSpark's letter further emphasized that "Dexcom may wish to have its patent counsel review the patents and patent applications listed in this document to determine if there is potential infringement of Dexcom products of these patent properties." (Exhibit E).

16. In particular, the letter identified the Dexcom Clarity software as a potential target for enforcement of InSpark's rights in the Patents-in-Suit because the Clarity software "incorporates HbA1c estimation using blood glucose (BG) data, the identification of hypoglycemia risk using s risk-based transformation of BG data, and the identification of intraday patterns of highs and low BG data."

17. The letter then specifically noted that "[InSpark] has rights to the following technologies that are substantially similar," including technology for "HbA1c Estimation using BG data: US 8538703, US 7874985, US 7025425."

18. The letter also threatened that because "there are employees at Dexcom that have been involved in the conception or implementation of the intellectual property that

4

InSpark Technologies Inc. has under license[,] it is possible that this technology was knowingly used in the development of [Dexcom's] product."

19.  The letter further emphasized InSpark's intent to "reach[] a negotiated licensing arrangement with Dexcom."  Additionally, unlike the first letter, which contemplated initial discussions with interested parties through the end of September 2016, the second letter pressured Dexcom to respond within a much shorter timeframe. Specifically, the letter demanded that Dexcom respond within just 21 days of Dexcom's receipt of the letter; in other words, by August 24, 2016 (over a month shorter than the timeframe contemplated for initial discussions in InSpark's first letter).

20.  Dexcom is informed and believes, and thereon alleges, that the August 2016 letter from InSpark addressed to Dexcom's Vice President of Legal Affairs, in conjunction with InSpark's July 2016 letter, plainly demonstrates that InSpark contends that without a license from InSpark, Dexcom's Clarity software would be infringing the Patents-in-Suit.

21.  Dexcom desires to continue offering for sale, selling, and commercializing its Clarity software free from the specter of InSpark's allegations of infringement of the Patents-in-Suit.

22.  InSpark's conduct creates a substantial and actual controversy between Dexcom and InSpark with respect to Dexcom's Clarity software of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  There is a definite and concrete dispute between InSpark and Dexcom as to whether Dexcom's Clarity software infringes the Patents-in-Suit.

23. Dexcom therefore asks the Court to declare that Dexcom's Clarity software has not and does not directly infringe, or contribute to or induce the infringement of, any claim of the Patents-in-Suit, which declaration is necessary and appropriate.

## COUNT I

### (Declaratory Judgment of Non-Infringement of the '425 patent)

24. Dexcom incorporates the allegations set forth in Paragraphs 1 to 23 above as if fully set forth herein.

25. Dexcom does not and has not infringed any claim of the '425 patent, whether directly or indirectly, by inducement or contributory infringement, literally or under the doctrine of equivalents.

26. As a result of the acts described in the foregoing paragraphs, there exists a definite, concrete, real, substantial, and justiciable controversy between Dexcom and InSpark regarding non-infringement of the '425 patent with respect to Dexcom's Clarity software. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

27. A judicial determination of non-infringement is necessary and appropriate so that Dexcom may ascertain its rights regarding the '425 patent.

## COUNT II

### (Declaratory Judgment of Non-Infringement of the '703 patent)

28. Dexcom incorporates the allegations set forth in Paragraphs 1 to 27 above as if fully set forth herein.

29. Dexcom does not and has not infringed any claim of the '703 patent, whether directly or indirectly, by inducement or contributory infringement, literally or under the doctrine of equivalents.

30. As a result of the acts described in the foregoing paragraphs, there exists a definite, concrete, real, substantial, and justiciable controversy between Dexcom and InSpark regarding non-infringement of the '703 patent with respect to Dexcom's Clarity software. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

31. A judicial determination of non-infringement is necessary and appropriate so that Dexcom may ascertain its rights regarding the '703 patent.

## COUNT III

**(Declaratory Judgment of Non-Infringement of the '985 patent)**

32. Dexcom incorporates the allegations set forth in Paragraphs 1 to 31 above as if fully set forth herein.

33. Dexcom does not and has not infringed any claim of the '985 patent, whether directly or indirectly, by inducement or contributory infringement, literally or under the doctrine of equivalents.

34. As a result of the acts described in the foregoing paragraphs, there exists a definite, concrete, real, substantial, and justiciable controversy between Dexcom and InSpark regarding non-infringement of the '985 patent with respect to Dexcom's Clarity software. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

35. A judicial determination of non-infringement is necessary and appropriate so that Dexcom may ascertain its rights regarding the '985 patent.

## DEMAND FOR JURY TRIAL

36. Dexcom hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Dexcom respectfully requests that this Court grant the following relief:

a. Judgment in its favor on all claims for relief;

b. A declaration that Dexcom does not and has not infringed any claim of United States Patent No. 8,538,703, whether directly or indirectly, by inducement or contributory infringement, literally or under the doctrine of equivalents;

c. A declaration that Dexcom does not and has not infringed any claim of United States Patent No. 7,874,985, whether directly or indirectly, by inducement or contributory infringement, literally or under the doctrine of equivalents;

d. A declaration that Dexcom does not and has not infringed any claim of United States Patent No. 7,025,425, whether directly or indirectly, by inducement or contributory infringement, literally or under the doctrine of equivalents

e. A determination that this is an exceptional case under 35 U.S.C. § 285 and an award of Dexcom's costs and reasonable attorneys' fees to the extent permitted by law; and

   f.  Any other and further relief that the Court deems just and proper.

DATED: August 24, 2016   Respectfully submitted,

   REED SMITH LLP

   */s/ R. Eric Hutz*
   R. Eric Hutz (No. 2702)
   1201 North Market Street, Suite 1500
   Wilmington, DE 19801-1163
   Telephone: +1 302 778 7500
   Facsimile: +1 302 778 7575
   Email: ehutz@reedsmith.com

OF COUNSEL:

REED SMITH LLP
John P. Bovich (*pro hac vice* to be filed)
Jonah D. Mitchell (*pro hac vice* to be filed)
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269
Email: jbovich@reedsmith.com
Email: jmitchell@reedsmith.com

REED SMITH LLP
Joshua P. Davis (*pro hac vice* to be filed)
Lisa M. Thomas (*pro hac vice* to be filed)
811 Main Street, Suite 1700
Houston, TX 77002-6110
Telephone: +1 713 469 3800
Facsimile: +1 713 469 3899
Email: jpdavis@reedsmith.com
Email: lthomas@reedsmith.com

   *Counsel for Plaintiff Dexcom, Inc.*